IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

<table>
<tr><td>

**WSOU INVESTMENTS, LLC d/b/a
BRAZOS LICENSING AND
DEVELOPMENT,**
**Plaintiff,**

*v.*

**ZTE CORPORATION,**
**Defendant.**

</td><td>

**6:22-cv-00136-ADA**
**6:22-cv-00137-ADA**
**6:22-cv-00138-ADA**
**6:22-cv-00139-ADA**

</td></tr>
</table>

<u>**ORDER DENYING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**</u>

Before the Court is Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development's ("WSOU" or "Plaintiff") Motion for Leave to Effect Alternative Service (the "Motion") on Defendant ZTE Corporation ("ZTE" or "Defendant") pursuant to Fed. R. Civ. P. 4(f)(3). ECF No. 7.[1] After reviewing the parties' briefings and the applicable law, the Court **DENIES** Plaintiff's motion.

**I. BACKGROUND**

On February 8, 2022, WSOU filed its initial complaint (the "Complaint"), alleging infringement of U.S. Patent No. 8,767,614 by ZTE. ECF No. 1. WSOU is a limited liability company organized in Delaware, with its principal place of business in Waco, Texas. *Id.* ¶ 1. ZTE is a Chinese corporation with its principal place of business in China. *Id.* ¶ 2. ZTE's subsidiary, ZTE USA, maintains a U.S. presence and registered agent for service of process in Austin, Texas. ECF No. 7 at 2.

---

[1] All docket numbers herein refer to case 6:22-cv-00136. Plaintiff filed this Motion is as Dkt. No. 7 in all four cases.

Before filing this case, WSOU had eleven pending patent cases against ZTE. *WSOU Invs., LLC v. ZTE Corp.,* Nos. 6:20-cv-00487 to 6:20-cv-00497 (W.D. Tex. June 3, 2020). On February 9, 2022, WSOU attempted to complete service in this case by emailing ZTE's U.S. counsel, Lionel Lavenue and Bradford Schulz, who represent ZTE in those eleven other patent infringement cases. ECF No. 7 at 3. On February 10, 2022, Mr. Lavenue responded, "I am not authorized to either accept or waive service for these new lawsuits against ZTE Corporation," and that "I'm not counsel of record for ZTE Corporation for these matters." ECF No. 7-5 at 1.

On February 10, 2022, WSOU mailed the Complaint to ZTE in China without going through the Hague Convention procedures. ECF No. 7 at 3.

On February 14, 2022, WSOU served the Complaint on the registered agent of ZTE USA in Austin, Texas. *Id.*

On March 3, 2022, WSOU filed this Motion to Effect Alternative Service. ECF No. 7. ZTE filed its opposition on March 7, 2022. ECF No. 8. This twenty-page motion mostly focused on why the case should be dismissed but dedicated less than three pages to why the Court should not grant alternative service and relied on only six cases. *Id.* at 14–16. Thus, the Court initially granted WSOU's motion. *WSOU Invs., LLC v. ZTE Corp.*, Nos. 6:22-cv-00136 to 6:22-cv-00139, 2022 WL 1063613 (W.D. Tex. Apr. 8, 2022). Thereafter, ZTE petitioned for a writ of mandamus, raising new arguments and citing dozens of additional authorities. Petition for a Writ of Mandamus, *In re ZTE Corp.*, No. 22-147 (Fed. Cir. May 5, 2022) (the "Petition"). After considering the new arguments and cases in the Petition, this Court vacated its Order Granting Plaintiff's Motion for Alternative Service and ordered replacement briefing. ECF No. 21.

On May 25, 2022, ZTE filed a replacement opposition to the Motion. ECF No. 22. WSOU filed its replacement reply on June 8, 2022. ECF No. 23. ZTE argues that the Court should deny

WSOU's Motion because service of process on ZTE must follow the procedures set forth by the Hague Convention. ECF No 22 at 1.

## II. LEGAL STANDARD

1.  Federal Rules of Civil Procedure

Rule 4(h) of the Federal Rules of Civil Procedure governs service of process on corporations such as Defendants. FED. R. CIV. P. 4(h). Pursuant to Rule 4(h)(2), service on a corporation at a place not within any judicial district of the United States is to be conducted in any manner prescribed by Rule 4(f) for serving an individual except for personal delivery under Rule (4)(f)(2)(C)(i).

According to Rule 4(f), service on a foreign defendant must comply with one of three provisions. FED. R. CIV. P. 4(f). Rule 4(f)(1) states that service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Rule 4(f)(2) provides several methods of service to an individual in a country when there is no applicable international agreement. Rule 4(f)(3) permits a party to use an alternative method of service if the party obtains permission of the court and the method is not otherwise prohibited by international agreement. *Id.*

So long as the method of service is not prohibited by international agreement, this Court has considerable discretion to authorize an alternative means of service. *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text."). "Under Rule 4(f)(3), federal courts have discretionary authority to direct service." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010). While "other methods of obtaining service of process are

technically allowed, principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its efforts to secure service of process upon defendant." *Midmark Corp. v. Janak Healthcare Priv. Ltd.*, No. 3:14-cv-088, 2014 WL 1764704, at *2 (S.D. Ohio May 1, 2014).

### 2. The Hague Convention

When serving a foreign defendant, the Federal Rules of Civil Procedure allow service "not within any judicial district of the United States [] by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f).

The International Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") is an international treaty governing the service abroad of foreign defendants. T.I.A.S. No. 6638 (Feb. 10, 1969). Direct "service pursuant to Hague Convention procedures is required only if the method of serving process involves the transmittal of documents abroad." *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533, 537 (5th Cir. 1990); *Volkswagenwerk AG. v. Schlunk*, 486 U.S. 694 (1988) ("The only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service.").

### 3. The Federal Rules of Civil Procedure Do Not Require a Hague Service Attempt Before Granting Leave for Alternative Service

The Federal Rules of Civil Procedure do not require a party to attempt service under the Hague Convention as a prerequisite to requesting alternative service under Rule 4(f)(3), and the U.S. Supreme Court denied certiorari on this issue. *Nuance*, 626 F.3d at 1238 ("numerous courts have found alternate service methods appropriate without a prior attempt to serve through the Hague Convention. . . . This court holds that the district court erred in requiring service of

4

[Defendant] under the Hague Service Convention."), *cert. denied,* 564 U.S. 1053 (2011). "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing" to 4(f)(1) and 4(f)(2) and is not "extraordinary relief" or a "last resort." *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 WL 4130643, at *3 (Fed. Cir. Sept. 10, 2021) (citing *Nuance*, 626 F.3d at 1239).  "[A] plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)." *Affinity Labs of Tex., L.L.C. v. Nissan N. Am. Inc.*, No. WA:13-CV-369, 2014 WL 11342502, at *1 (W.D. Tex. July 2, 2014).

*Sheets* stands only for the rule that if a party attempts to serve an entity in a Hague Convention country *by mail*, then *that mail service* must comply with the Hague Convention's procedures to properly serve the foreign defendant.  *Sheets* does not preclude other forms of service and does not make Hague Convention compliance mandatory before seeking leave to effect alternative forms of service. *Sheets*, 891 F.2d at 537 (citing *Schlunk*, 486 U.S. at 705–707). Alternative service under Rule 4(f)(3) remains available to a party at any time, even after a party attempts to mail a complaint to an entity in a Hague Convention country.

4.    This Court Imposes Typical Requirements Before Granting Alternative Service

So long as the method of service is not prohibited by international agreement, the Court has considerable discretion to authorize an alternative means of service. *STC.UNM v. Taiwan Semiconductor Manufacturing Co. Ltd.*, No. 6:19-cv-261-ADA, 2019 U.S. Dist. LEXIS 231994, at *3 (W.D. Tex. May 29, 2019) (citing *Rio*, 284 F.3d at 1014 (9th Cir. 2002)).

This Court recently conformed its exercise of discretion to the "typical" practices recently described by the Federal Circuit. *Aprese Sys. Texas, LLC v. Audi AG*, No. 6:21-CV-01014-ADA, 2022 WL 891951, at *2 (W.D. Tex. Mar. 25, 2022); *OnePlus*, 2021 WL 4130643, at *3. When

exercising its discretion, this Court looks "whether there has been a showing that the plaintiff has reasonably attempted to effectuate service on the defendant by conventional means." *OnePlus*, 2021 WL 4130643, at *3; *The Trustees of Purdue Univ. v. STMicroelectronics N.V.et al.*, No. 6:21-CV-00727-ADA, 2021 WL 5393711, at *1 (W.D. Tex. Nov. 18, 2021) ("The Court will not permit alternative service here where Purdue has not shown that it has at least made some effort to serve ST-INTL"); *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzen) Tech. Ltd.*, No. 6:20-CV-00876-ADA, 2021 WL 4974040, at *1 (W.D. Tex. Oct. 25, 2021) ("The Court will not permit alternative service here where [Plaintiff] has not shown that it has at least made some effort to serve [Defendants] through other means first.").

In special circumstances, the Court will grant leave to effect alternative service without first requiring an attempt to serve defendants through other, conventional means. *OnePlus*, 2021 WL 4130643, at *3 ("To be sure, courts have typically invoked Rule 4(f)(3) only when special circumstances have justified departure from the more conventional means of service."). This consideration guides the exercise of discretion but is not an exhaustion requirement. *Id.* This Court does not intend "to order alternative service in every case in which more conventional means of service would be merely inconvenient." *Id.* at *4. Due to the Federal Circuit's concern, this Court will not invoke "alternative means of service under Rule 4(f)(3) based solely on the fact that service under the Hague Convention is more cumbersome than more informal means of service on representatives of a foreign entity." *Id.* at *3.

If service under the Hague Convention is required, plaintiffs should make a reasonable effort to attempt service under the Hague Convention before requesting alternative means of service from this court, except when special circumstances otherwise justify alternative service. Special circumstances that justify alternative service include "when a member state has

categorically refused" to effect service. *Nuance*, 626 F.3d at 1238. A court may grant alternative service when war makes service impractical in a member state. *Avus Holdings, LLC, et al., v. Iron Lab*, No. 6:22-cv-00134 (W.D. Tex. Apr. 25, 2022), ECF No. 23 at 4. The Federal Rules of Civil Procedure expressly envisions granting alternative service when a Hague member state takes too long to complete service or in cases of urgency. Fed. R. Civ. P. 4 Advisory Committee Note to 1993 Amendment. Courts also grant alternative service when a plaintiff "currently in the process of serving [a defendant] under the Hague Convention" moves to "request alternative service so as to not further delay this case." *Ackerman v. Glob. Vehicles U.S.A., Inc.*, No. 4:11CV687RWS, 2011 WL 3847427, at *3 (E.D. Mo. Aug. 26, 2011).

### III. ANALYSIS

WSOU requests leave to effect alternative service under Rule(4)(f)(3) to serve ZTE by (1) emailing ZTE's U.S. counsel and (2) personal service to ZTE's subsidiary, ZTE USA. ECF No. 7 at 1. So far, WSOU has (1) mailed the Complaint to counsel who represent ZTE in other pending patent cases, (2) mailed the Complaint to the registered agent for the subsidiary ZTE USA, and (3) mailed the Complaint to ZTE in China but without complying with the Hague procedures. In its Opposition, ZTE argues that this Court should deny WSOU's request because WSOU triggered mandatory service under the Hague Convention by transmitting documents abroad to ZTE's headquarters in China. ECF No. 22 at 1.

### A.    Applicable Standard

First, the Court rejects ZTE's argument that "alternative service is improper here because Brazos is required to complete service in compliance with the Hague Convention." ECF No. 22 at 1. The authority in Section II above establishes that alternative service provided by Rule 4(f)(3) always remains an *alternative* method of service that stands on equal footing with other forms of service; neither is a prerequisite of the other.

This Court has discretion but does not automatically grant leave to effect alternative service in every case. This Court requires parties to either show that they have made a reasonable effort at attempt conventional service or to show that special circumstances justify alternative service. In cases involving a foreign defendant in a Hague Convention member country, the plaintiff should (1) reasonably attempt to follow the Hague Convention before requesting alternative service or (2) show that a special circumstance justifies granting alternative service.

**B.      Plaintiff Has Not Made a Reasonable Effort at Conventional Service**

1.      Service on ZTE by Emailing ZTE's U.S. Counsel is Not a Reasonable Effort at Conventional Service

WSOU first attempted service on ZTE by emailing ZTE's U.S. counsel, which represents ZTE in eleven other patent infringement cases. Although this counsel represents ZTE in other cases, this counsel does not represent ZTE in this case. Mr. Lavenue wrote, "I'm not counsel of record for ZTE Corporation for these matters." ECF No. 7-5 at 1. Emailing counsel who do not represent a defendant in the case is not a form of conventional service, so attempting this form of service is not a reasonable attempt at conventional service.

2.      Service on ZTE through ZTE USA is Not a Reasonable Effort at Conventional Service

WSOU attempted service on ZTE by sending the Complaint to the registered agent of ZTE USA, which is a subsidiary of ZTE. ECF No. 7 at 3. In Texas, indirect service of process upon a foreign defendant by serving its domestic subsidiary is proper if the defendant has actually authorized the subsidiary to accept service of process on its behalf or if the domestic subsidiary is an alter ego of the parent. *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 3:17-CV-01827-N, 2018 WL 3330022, at *3 (N.D. Tex. Mar. 16, 2018). A sister Court has already found that "ZTE Corporation did not explicitly authorize ZTE USA to accept service on its behalf," that "ZTE USA is not the alter ego of ZTE Corporation," and that an "attempt to serve ZTE Corporation

indirectly by serving ZTE was therefore improper." *Id.* at *3–4. Thus, serving the non-party subsidiary ZTE USA is not a form of conventional service when ZTE USA is not an alter ego of ZTE and when ZTE has not authorized ZTE USA to accept service. Attempting this form of service is not a reasonable attempt at conventional service.

### 3.   Direct Mail to ZTE is Not a Reasonable Effort at Hague Service

WSOU's attempted service on ZTE by mailing the Complaint to ZTE in China. ECF No. 7 at 3. "The primary innovation of the [Hague] Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698. To properly serve a foreign defendant from a country that is a member of the Hague Convention, a plaintiff must ask the defendant state's established central authority to serve documents by the prescribed methods of that state. *Id.* at 698–99. Mailing the Complaint directly to ZTE avoids conforming with the Hague Convention. Thus, directly mailing the Complaint to ZTE does not qualify as a form of conventional Hague service, and attempting this form of service is not a reasonable attempt at conventional service.

### C.   No Special Circumstances Justify Alternative Service

Even if a Plaintiff has not attempted conventional service, a Court will still invoke Rule 4(f)(3) when "special circumstances have justified departure from the more conventional means of service." *OnePlus,* 2021 WL 4130643, at *3. Example justifications include war, futility, urgency, and actual delay, but not expected inconvenience. WSOU has not shown that any special circumstances justify alternative service.

WSOU argues that Hague Convention service is inefficient and expensive. ECF No. 23 at 12–13. Specifically, "service on ZTE under the Hague Convention would require 18 months and that ZTE failed to challenge that finding." ECF No. 23 at 12 (citing *Fundamental*, 2018 WL 3330022, at *5). Even if true, 18 months of expected delay does not cross the line from

inconvenience to futility. The Court has weighed this delay against the Federal Circuit's "concern" against the "invocation of alternative means of service under Rule 4(f)(3) based solely on the fact that service under the Hague Convention is more cumbersome than more informal means of service on representatives of a foreign entity." *OnePlus*, 2021 WL 4130643, at *3. To stay in line with guidance from the Federal Circuit, this Court wishes to make clear that it does not "intend[] to order alternative service in every case in which more conventional means of service would be merely inconvenient." *Id.* at *4. Thus, the Court will not grant alterative service simply due to 18 months of expected delay before a Plaintiff even attempts Hague service.

If an unreasonable delay materializes after WSOU attempts Hague service, then the Court will grant leave to effect alternative service at that time, especially in combination with an unchallenged expectation of an 18-month delay. *Ackerman*, 2011 WL 3847427, at *3 (a plaintiff "currently in the process of serving [a defendant] under the Hague Convention" can "request alternative service so as to not further delay this case").

### D.     The Proposed Alternative Service Comports With Due Process

When a court authorizes alternate service of process, the plaintiff's request is analyzed through traditional notions of due process, satisfied when efforts at giving notice provide fundamental fairness by exhibiting a reasonable probability of actual notice. *OnePlus*, 2021 WL 2870679, at *3. WSOU requests leave to effect alternative service under Rule(4)(f)(3) to serve ZTE by (1) emailing ZTE's U.S. counsel and (2) personal service to ZTE's subsidiary, ZTE USA. ECF No. 7 at 1.

So far, WSOU has (1) mailed the Complaint to counsel who represent ZTE in other pending patent cases, (2) mailed the Complaint to the registered agent for the subsidiary ZTE USA, and (3) mailed the Complaint to ZTE in China but without complying with the Hague procedures. Although these attempts do not quality as attempts at conventional service, these efforts have

almost certainly resulted in ZTE having actual notice of this lawsuit. In view of this background, the Court finds that ZTE's proposed further methods of (1) emailing ZTE's U.S. counsel and (2) personal service to ZTE's subsidiary, ZTE USA provide further gratuitous notice, well beyond the reasonable probability of actual notice required by due process.

ZTE does not make any convincing argument that these forms of alternative service are not reasonably calculated to give notice.  ZTE first analogizes this case to *Purdue*, but the Court in *Purdue* denied the motion for alternative service "for failing to at least attempt to serve [Defendant] pursuant to the Hague Convention," not based on the likelihood of the proposed form of alternative service to give notice. ECF No. 22 at 13 (citing nonexistent page *3 of 2021 WL 5393711). ZTE also argues that the proposed forms of service are improper. ECF No. 22 at 13–15. ZTE argues that certain forms of service qualify as conventional service, repeat arguments about why the Court should not grant alternative service, and repeat arguments about whether alternative service is available at all. These arguments miss the question of whether the proposed forms of *alternative* service are reasonably calculated to give notice as required by due process considerations.

### IV. CONCLUSION

WSOU has not yet attempted service under the Hague Convention, has not yet made a reasonable effort to otherwise attempt service by conventional means, and has not yet shown that some other circumstance justifies alternative service. WSOU's motion for alternative service is **DENIED**.

WSOU has leave to file a new motion for alternative service after it makes a reasonable attempt at service under the Hague convention or upon the materialization of a special circumstance. The Court had sufficient briefing on the relevant issues and hereby limits further briefing.  If WSOU ever files a new motion for leave to effect alternative service, WSOU shall

have 3 pages for its motion, ZTE shall have 3 pages for its opposition due one week thereafter, and then WSOU shall notify that the Court's law clerk that the briefing is ripe.

The parties filed multiple motions in this case disputing the adequacy of service and wastefully raised the cost of litigation. The Court reminds the parties that service costs are taxable against the losing party, and the Court encourages the parties to meet and confer to avoid needless motion practice. WSOU might have completed service via the Hague by now if WSOU attempted it at the beginning of this case. ZTE has the right to insist on full compliance with the Hague Convention procedures, but ZTE's counsel in other pending cases has notice of this lawsuit for all practical purposes.

ZTE's U.S. counsel waived service in the eleven other pending cases against WSOU.  ECF No. 7 at 3. If WSOU prevails, then the Court will be strongly inclined to deem ZTE's actions in this case "exceptional" under 35 U.S.C. § 285 because ZTE's insistence for Hague service in this case stands out from its waiver of service in the 11 other pending cases, especially in combination with the excessive motion practice to date. So, if WSOU prevails, the Court will be inclined to award fees from the beginning of the case up through the completion of service, absent a similar waiver in this case. Moreover, Mr. Lavenue has represented that "I'm not counsel of record for ZTE Corporation for these matters," and the Court relied on this representation in its decision. ECF No. 7-5 at 1. If it turns out that ZTE has in fact obtained actual notice through Mr. Lavenue's firm and that ZTE has worked with Mr. Lavenue's firm beyond making a special appearance to object to service, then the Court will consider this in its full § 285 analysis if WSOU becomes the prevailing party.

Signed this 4th day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE